USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 0 5 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,

    -against-

DAVID O. PIPARO,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DAVID O. PIPARO,

    -against-

UNITED STATES OF AMERICA,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MEMORANDUM DECISION
AND ORDER

11 Crim. 18 (GBD)
16 Civ. 4990 (GBD)

GEORGE B. DANIELS, United States District Judge:

       On December 8, 2010, Defendant David Piparo was arrested and charged with multiple robberies punishable under the Hobbs Act, 18 U.S.C. § 1951, pursuant to the Armed Career Criminal Act of 1984 ("the ACCA"), 18 U.S.C. § 924(e), the Gun Control Act of 1968 ("Gun Control Act"), 18 U.S.C. § 922(g)(1), and 18 U.S.C. § 924(c).[1] Defendant later pleaded guilty to a five-count Superseding Information on February 28 2012. (ECF No. 19).[2] On October 3, 2012, he was sentenced to twenty-two (22) years' imprisonment: fifteen (15) years on counts one through

---

[1] This statute imposes several mandatory minimum sentences for federal "crimes of violence" or drug trafficking offenses in which a firearm is used or possessed. *See generally* 18 U.S.C. § 924(c).

[2] All ECF references pertain to documents filed in *United States v. Piparo*, No. 11 Crim. 18 (GBD) for consistency.

1

four, to run concurrently, and a mandatory consecutive seven (7) years on count five. (Judgment, ECF No. 25, at 2). Before this Court is Defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that the sentence is unconstitutional in light of *Johnson v. United* States, 135 S. Ct. 2551 (2015) (*Johnson II*)[3]. (Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Mot. to Vacate"), ECF No. 28.) Defendant's motion is DENIED.

## I. FACTUAL BACKGROUND

The Superseding Information charged Defendant as follows: count one charged Defendant as a felon in possession of a firearm, pursuant to the Gun Control Act and the ACCA; counts two through four charged Defendant with three separate Hobbs Act robberies in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2[4]; and count five charged Defendant with brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2. (*See* Gov't Mem. of Law in Opp'n to Def.'s Pet. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Opp'n"), ECF No. 39, at 1–2.)

At the time Defendant pleaded guilty, this Court informed him "that the maximum possible penalty that could be imposed on [c]ount [o]ne is a [] sentence of up to life imprisonment, that

---

[3] *Johnson I*, decided by the Supreme Court in 2010, found that the Florida felony offense of battery was a "violent felony" under the ACCA. *Johnson v. United States*, 559 U.S. 133, 140 (2010). Because the issue in that case does not directly apply to this case, this Court will only address *Johnson II*.

[4] The statute provides the following:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2(a)–(b).

2

carries a mandatory minimum sentence of 15 years' imprisonment," to which Defendant said he understood. (*Id.* at 7:14–23.) This Court then explained that counts two through four "each carry a maximum sentence of up to 20 years' imprisonment," to which Defendant again said he understood. (*Id.* at 7:24–8:5.) This Court finally informed Defendant that count five carried "a maximum sentence of up to life imprisonment, a mandatory minimum sentence of [7] years' imprisonment, and that sentence must be served consecutive to any other sentence, including the sentence imposed on the other counts in the [I]nformation." (*Id.* at 8:6–10.) Defendant once again answered in the affirmative when asked if he understood. (*See id.* at 8:16.) When asked what crimes he committed that made him guilty of counts one through five, Defendant stated the following:

> On November 24th, I possessed a firearm in the Bronx. On November 30th, I robbed a jewelry store at gunpoint in Pelham Manor, in New York. And then on November 3rd, [] I robbed a GameStop store in the Bronx. On November 15th, I robbed a GameStop store in the Bronx at gunpoint. On November 15th, I used a firearm in a robbery at a GameStop business and brandished it.

(*Id.* at 14:21–15:2.) Defendant also stated that he knowingly possessed the firearm that formed the basis of count one after having been convicted of a felony offense—robbery—on at least three previous occasions, in at least three separate cases. (*See id.* at 15:25–17:2.)

At the October 3, 2012 sentencing, neither defense counsel nor the Government made any objections or corrections to the Presentence Investigation Report ("PSR"), which calculated Defendant's sentence based on his designation as a "career criminal" pursuant to the ACCA. (*See* Mem. in Supp., Ex. B (Sentencing Tr.), ECF No. 38, at 2:9–16.) Relying on the 2011 United States Sentencing Guidelines (the "Guidelines"), the PSR identified a sentencing range of 262 to 327 months on counts one through four, with a 180-month (15-year) mandatory minimum term of imprisonment on count one, and a consecutive mandatory minimum term of imprisonment of 84

3

months (7 years) on count five, for a total of 346 to 411 months (approximately 29 to 34 years). (*See id.* at 4:4–8:9.) After considering the factors in 18 U.S.C. §3553(a) relevant to sentence, including the guidelines range, Defendant's total offense level and criminal history category,[5] age,[6] health,[7] admission of guilt,[8] and impending state court sentence,[9] this Court imposed the mandatory minimum sentence of 264 months imprisonment (15+7 years). (*Id.* at 12:11–17.)

## II. PROCEDURAL HISTORY

### A. Chief Judge McMahon's Standing Order Allowing for "Placeholder" Petitions.

On June 8, 2016,[10] Chief Judge Coleen McMahon issued a "Standing Order" allowing for § 2255 petitioners to file "placeholder" petitions on or before June 27, 2016 "in light of the United States Supreme Court decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and the fact that several hundred petitions [would] be filed by federal prisoners seeking relief . . . before the one-year anniversary of the decision on June 27, 2016[.]" (ECF No. 29, at 1.) Chief Judge McMahon reasoned that the order would "afford the effective representation of counsel, [and] allow the Court of Appeals to clarify the application of *Johnson* to particular issues so that the District Court may render consistent rulings[.]" (*Id.*) Defendant timely filed his § 2255 petition pursuant to Judge McMahon's order on June 24, 2016, moving this Court to vacate his sentence

---

[5] 34 and VI, respectively. (*See* Sentencing Tr. at 12:8–9.)

[6] Defendant was over the age of 50 at the time of sentencing. (Sentencing Tr. 9:20.)

[7] Defendant suffered from colon cancer at the time of sentencing. (Sentencing Tr. 9:20.)

[8] (Sentencing Tr. 13:9–16.)

[9] Shortly after his federal sentencing, Mr. Piparo faced "a sentencing in [] state court for [a] carjacking to which he pleaded guilty . . . . In that case[, Defendant] fac[ed] a 20-year[-]to[-]life sentence," and he faced designation as a "three-time [or] persistent violent felon[.]" (Sentencing Tr. 9:21–10:3.)

[10] The standing order was filed on this Court's docket on June 28, 2016.

under 18 U.S.C. §§ 924(c) and (e) on the asserted ground that his robberies are neither "violent felonies" nor "crimes of violence" under the meanings of the statute.[11] (Mot. to Vacate at 5, 9.) Because the law in this circuit is clear that New York robbery in the first degree and Hobbs Act robbery are violent felonies and crimes of violence respectively, Defendant's motion is DENIED.

### III. LEGAL STANDARDS

28 U.S.C. § 2255 confers upon a federal prisoner "the right to be released upon the ground that the sentence was" (1) "imposed in violation of the Constitution or laws of the United States," (2) without jurisdiction, (3) if "the sentence was in excess of the maximum authorized by law," or (4) if it "is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). Defendant's motion to vacate must therefore be granted if the sentence imposed by this Court was unconstitutional or unlawful in light of *Johnson II* and other precedent.

#### A. "Violent Felony" Under the ACCA, 18 U.S.C. § 924(e).

The ACCA provides that any person who violates the Gun Control Act[12] "and has three previous convictions . . . for a violent felony or a serious drug offense, or both . . . shall be fined . . . and imprisoned not less than [15] years[.]" 18 U.S.C. § 924(e)(1). Though the definition of the term "violent felony" has been discussed at length by the Supreme Court, its decision in the 2015 case *Johnson v. United States* provided greater clarity.

---

[11] Because Defendant no longer alleges errors in the calculation of his Guidelines range, this Court will not address these arguments. (*See* Mem. in Supp. at 6 n. 2.)

[12] The section of the Gun Control Act with which Defendant was charged makes it unlawful for a person convicted of a "crime punishable by imprisonment for a term exceeding one year" to receive a firearm in interstate commerce. 18 U.S.C. §§ 922(a), (g).

5

### 1. The Supreme Court's Decision in *Johnson*.

Samuel Johnson was a felon with a long criminal record who was under investigation by the FBI for his involvement in a white-supremacist organization the Bureau suspected of terrorism. *Johnson II*, 135 S. Ct. at 2556. Johnson was eventually arrested and pleaded guilty to possessing an "AK–47 rifle, several semiautomatic firearms, and over 1,000 rounds of ammunition" in violation of the ACCA. *Id.* at 2556. This crime and others, including possession of a short-barreled shotgun in violation of a Minnesota statute, qualified as a sentencing enhancement for Johnson, who was subsequently sentenced to 15 years' imprisonment under the residual clause of the ACCA. *See id.* The Supreme Court was tasked with deciding whether the ACCA's definition of a "violent felony" as "any felony that 'involves conduct that presents a serious potential risk of physical injury to another[,]' 18 U.S.C. § 924(e)(2)(B)[,]"—the residual clause—was unconstitutionally vague. *Id.* at 2555. The Court found that this clause requires an indeterminant and wide-ranging inquiry which "denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2557. It thus held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process[,]"[13] clarifying that its decision did not "call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."[14] *Id.* at 2563.

---

[13] *Welch v. United States* clarifies that *Johnson* is afforded retroactive application. *See* 136 S. Ct. 1257, 1268 (2016).

[14] Section 924(e) of the ACCA defines a violent felony as "'any crime punishable by imprisonment for a term exceeding one year' that":

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" § 924(e)(2)(B) (emphasis added).

After *Johnson II*, a "violent felony" is thus defined as a crime punishable by more than a year of imprisonment that either: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "force clause"); or (2) "is burglary, arson, [] extortion, [or] involves use of explosives" (the "enumerated offenses"). *Id.* at 2654. With the residual clause stricken from the ACCA, circuit courts analyzing *Johnson II* sought to define which offenses fit within the force clause and enumerated offenses.

### 2. The Second Circuit's Approach to the "Violent Felony" Determination.

Courts in this circuit "apply a 'categorical approach' to determine whether a prior conviction qualifies as a 'violent felony.'" *United States v. Thrower*, 914 F.3d 770, 774 (2d Cir. 2019) (citing *United States v. Hill*, 890 F.3d 51, 55–56 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 844 (2019) (emphasis added). This simply means that a court must determine "the minimum criminal conduct necessary for conviction under a particular statute." *Id.* (citation and internal quotation marks omitted). The minimum criminal conduct necessary for an offense is discerned by looking "only to the statutory definitions—i.e., the elements—of the offense, and not to the particular underlying facts. . . . If the state-law offense categorically requires the elements listed in § 924(e)(2)(B)(i), it may serve as a predicate 'violent felony.'" *Id.* (internal quotation marks and citation omitted); *see also United States v. Pereira-Gomez*, 903 F.3d 155, 164 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1600 (2019).

There are some cases, however, in which a "defendant is convicted under a more complicated statute that criminalizes multiple acts in the alternative—thereby requiring a sentencing court to deduce which of these elements 'was integral to the defendant's conviction.'"

---

*Johnson II*, 135 S. Ct. at 2555–56. The italicized language was declared unconstitutional after *Johnson II*. *See id.* at 2563.

7

*Pereira*, 903 F.3d at 161. In such a case, a court may apply the "modified categorical approach." *Id.* (internal quotation marks omitted). This requires a court "to 'look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'" *Id.* at 161–62. The Second Circuit in *Pereira-Gomez* adopted the modified categorical approach "because Pereira was convicted under a statute that criminalizes multiple acts in the alternative," including second-degree robbery, and Pereira's certificate of disposition failed to specify under which subsection of the statute he was charged. *Id.* at 162.

### B. "Crime of Violence" Under the 18 U.S.C. § 924(c) "Tack-On."

Section 924(c) imposes a mandatory 7-year sentence on any person who, "during and in relation to any crime of violence . . . uses[,] carries . . . or possesses a firearm . . . in furtherance of [that] crime [that is brandished.]" 18 U.S.C. § 924(c)(1)(A). A "crime of violence" is defined as a felony offense that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A)–(B).

Subsection (A) is known as the statute's force or elements clause, while subsection (B) is known as the statute's "risk-of-force" or residual clause. *See United States v. Davis*, 139 S. Ct. 2319, 2324 (2019); *see also Hill*, 890 F.3d at 54 n. 5. The categorical approach is also used when assessing whether an offense is a "crime of violence" under the force clause, § 924(c)(3)(A). *Hill*, 890 F.3d at 55 ("To determine whether an offense is a crime of violence, courts employ what has come to be known as the "categorical approach"). Recently, the Supreme Court has held that the

8

statute's residual clause, § 924(c)(3)(B), is unconstitutionally vague: "For years, almost everyone understood § 924(c)(3)(B) to require exactly the same categorical approach that this Court found problematic in the residual clause[] of the ACCA . . . . Today, the government acknowledges that, if this understanding is correct, then § 924(c)(3)(B) must be held unconstitutional too." *Davis*, 139 S. Ct. 2319 at 2326–27.

## IV. DEFENDANT'S PRIOR NEW YORK FIRST-DEGREE ROBBERY CONVICTIONS

### A. New York Robbery in the First Degree Is a "Violent Felony" Under the ACCA's Force Clause.

New York's Penal Law defines robbery as a "forcible stealing" by threatening "the immediate use of physical force upon another person" to take their property, overcome their resistance to the forcible stealing of their property, or by compelling the property owner to surrender their property. N.Y. Penal Law § 160.00 (McKinney). A person commits robbery in the first degree under New York's statute "when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime":

> 1. Causes serious physical injury to any person who is not a participant in the crime; or
> 2. Is armed with a deadly weapon; or
> 3. Uses or threatens the immediate use of a dangerous instrument; or
> 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . .

N.Y. Penal Law § 160.15 (McKinney).

Defendant claims that an offense of first-degree robbery under § 160.15 is not a "violent felony" under the ACCA's force clause because "New York's baseline definition of robbery ("forcible stealing," N.Y. Penal Law § 160.00) does not require 'violent force' necessary to satisfy

9

the force clause under *Johnson*, 559 U.S. 133[.]" (Mem. in Supp. at 7.) He thus argues that his prior "four convictions for robbery in the first degree in violation of NY Penal Law § 160.15" cannot serve as "violent felony" convictions under the ACCA. (Mot. to Vacate at 5.)

First, this circuit has explicitly stated that New York robbery in the first degree is a "violent felony" under the ACCA's force clause: "Unlike the battery statute in *Johnson [I]*, New York's robbery statute cannot be violated 'by any intentional physical contact, no matter how slight.' New York defines robbery as 'forcible stealing,' which requires 'us[ing] or threaten[ing] the immediate use of physical force upon another person.'" *Pereira-Gomez*, 903 F.3d at 165. Because New York's robbery statute requires "forcible stealing," the panel found that "[t]hat level of physical force must be enough 'to prevent resistance to the taking or to compel the owner to deliver up the property.' *By its plain language, then, New York's robbery statute includes as an element the use of violent force.*'" *Id.* (emphasis added). This interpretation was upheld in *Thrower*, which found that New York's "robbery statute matches the ACCA definition of a 'violent felony'" and thus concluded that "every degree of robbery in New York requires the common law element of 'forcible stealing[.]' [That] is a 'violent felony' under the ACCA." *Thrower*, 914 F.3d at 776–77. New York robbery is thus categorically a "violent felony" under the ACCA's force clause.

Still, even if New York robbery did not categorically fit within the ACCA's definition of a violent felony, Defendant's prior robberies would constitute "violent felonies" under the modified categorical approach as well. At his plea hearing, Defendant stated that he knowingly possessed the firearm that formed the basis of his designation as a career criminal pursuant to the ACCA after having been convicted of first-degree robbery on at least three previous occasions:

> MR. KASULIS [Prosecutor]: With regard to the defendant's possession of the firearm with regard to [c]ount [o]ne, can you confirm that he knowingly possessed the firearm.

10

> THE COURT: Did you knowingly possess that firearm, Mr. Piparo?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And was that after you had been convicted on three previous occasions of a felony offense?
> THE DEFENDANT: Yes.
> THE COURT: You had been previously convicted on other cases.
> THE DEFENDANT: Yes.
> THE COURT: Charges that you were a felon in possession of a weapon.
> THE DEFENDANT: Oh.
> THE COURT: And you had previously had those three convictions that are alluded to in the information.
> THE DEFENDANT: Yes.
> MR. KASULIS: And those three convictions, your Honor, were for violent felonies. If you can confirm that.
> THE COURT: What were those convictions for?
> MR. KASULIS: Are you asking me, your Honor?
> THE COURT: Yes.
> MR. KASULIS: Your Honor, I believe actually all three of them were for robbery.
> THE COURT: You had three robbery convictions when these offenses were committed?
> THE DEFENDANT: Yes, your Honor.

(Plea Tr. 15:25–17:2.) Moreover, the PSR details numerous instances in which Defendant robbed businesses and people—mainly women—by brandishing firearms. (*See, e.g.*, PSR ¶¶ 79–88.) On one occasion, Defendant stole a woman's purse at gunpoint, then forced her to start her vehicle in an attempt to steal it as well. (*Id.* ¶ 88.) Thus, even under the modified categorical approach, Defendant's prior convictions are "violent felonies" under the ACCA.

Because Defendant's prior convictions of New York robbery in the first degree are categorically "violent felonies" under the ACCA, Defendant's 15-year sentence pursuant to the ACCA is appropriate.

### B. This Court's Sentence Pursuant to the 2011 Sentencing Guidelines Is Also Appropriate.

Defendant argues that his 15-year sentence on count one drove this Court's sentences on counts two through four, quoting the sentencing transcript: "[i]n this case, I believe that given the

11

total circumstances, a sentence of the mandatory minimum sentence to be imposed in this case is a reasonable sentence." (Mem. in Supp. at 13 (quoting Sentencing Tr. 12:11–13).) Defendant thus concludes that this Court "erroneous[ly] assum[ed] a 15-year mandatory minimum on [c]ount [o]ne[,] 'permeat[ing] the record,' and taint[ing] the entire sentence." (*Id.* at 14.) This interpretation is erroneous.

As has already been demonstrated above, Defendant's 15-year mandatory minimum sentence is appropriate. Additionally, this Court *could have* sentenced Defendant to at least 20 years imprisonment on each of counts two through four, which it explained during the plea hearing: "THE COURT: And on [c]ounts [t]wo, [t]hree, and [f]our, they *each* carry a maximum sentence of up to 20 years' imprisonment . . . . Do you understand that? THE DEFENDANT: Yes, your Honor." (Plea Tr. 7:24–8:5 (emphasis added).) However, this Court sentenced Defendant to the least amount of time possible, taking into consideration his age, health, impending state court sentence, and admission of guilt. Defendant's argument that this Court's lenient imposition of the 15-year mandatory minimum on counts one through four tainted the entire sentence is thus incorrect because the 15-year mandatory minimum was reasonable and proper under the ACCA.

## V. DEFENDANT'S HOBBS ACT ROBBERY

### A. Hobbs Act Robbery Is a "Crime of Violence" Under § 924(c)'s Force Clause.

18 U.S.C. § 1951 provides that a Hobbs Act robbery may be committed by "[w]hoever in any way or degree . . . affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section[.]" 18 U.S.C. § 1951(a). Defendant argues that Hobbs Act robbery is not a "crime of violence" within the meaning of § 924(c) because it "was

12

modeled on New York's robbery statute and therefore adopts New York's understanding of 'force.'" (*See* Mem. in Supp. at 14.)

Section 924(c)'s force clause defines a "crime of violence" as one which "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). Because the force clauses in the ACCA and § 924(c) mirror one another, robbery under the Hobbs Act is categorically a "crime of violence" under § 924(c), just as New York robbery is categorically a "violent felony" under the ACCA. Courts in this circuit agree. *See Hill*, 890 F.3d at 60 ("[W]e agree with all of the circuits to have addressed the issue . . . and hold that Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'").

Because Defendant's Hobbs Act robberies are categorically "crimes of violence," his 7-year mandatory consecutive sentence enhancement pursuant to § 924(c) was also appropriate.[15]

### B. Defendant's Guilty Plea Was Voluntarily and Intelligently Taken.

Defendant argues that this Court "did not inform [him] of the statutory definition of 'crime of violence' applicable to the [c]ount [f]ive § 924(c) offense[,]" and that as a result, his guilty plea was neither voluntary nor intelligent. (Mem. in Supp. at 4, 17–18.) Federal Rule of Criminal Procedure 11(b) provides that, before accepting a guilty plea from a defendant, "the court must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading[.]" Fed. R. Crim. P. 11(b)(1)(G). The rule also provides that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006) (quoting Fed. R. Crim. P.

---

[15] Defendant also argues that "Hobbs Act robbery encompasses nonviolent threats of harm to intangible property, that is, threats of economic loss." (Mem. in Supp. at 15.) This argument lacks merit, however, because this circuit has determined that Hobbs Act robbery is in and of itself a crime of violence.

13

11(h)). Therefore, "even where the judge's [advice as to the nature of the offense] was not absolutely complete, in that some essential element of the crime was not mentioned, the error may be found harmless where the defendant's responses clearly indicate his awareness of that element." *Id.* (internal quotation marks omitted); *see also United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997). A defendant may demonstrate that a Rule 11 error affected a substantial right by showing "a reasonable probability that, but for the error, he would not have entered the plea." *Torrellas*, 455 F.3d at 103 (internal quotation marks omitted) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). In making such a determination, courts typically look to "any record evidence tending to show that a misunderstanding was inconsequential to a defendant's decision' to plead guilty, as well as the 'overall strength of the Government's case." *Id.* (citation and internal quotation marks omitted).

Even in other cases in this circuit, where a defendant's charges were cursorily described during a plea hearing, the Second Circuit nonetheless found that such instructions constituted harmless error that did not affect a substantial right. For example, in *Torrellas*, the government and district court judge gave conflicting accounts of the conduct that made the defendant guilty of the offense at issue: the court initially stated that he "unlawfully, knowingly and willfully *receiv*[*ed*] firearms shipped in interstate commerce, knowing and having reasonable cause to believe that the firearms . . . were stolen." *Id.* at 104–05. "Moments later, the court stated that 'the accusation is that Mr. Torrellas unlawfully *possessed*' firearms 'which were registered to other people.'" *Id.* at 105. However, the government, in describing the nature of its proof, stated that the defendant "'*took* approximately five weapons from the lockers of club members' and '*took* the weapons for himself without permission from their owners[.]'" *Id.* There was thus confusion as to whether the defendant had unlawfully received, possessed, or stolen the weapons at issue. *See*

14

*id.* Even so, the panel found that "while the terminology used at the plea hearing left something to be desired as to precision, the record as a whole leaves no doubt whatever that Torrellas was aware of the nature of the charge against him as possession of stolen firearms and that his plea established that possession." *Id.*

Therefore, even where the Second Circuit has found that a district court judge erred slightly in instructing a defendant, it has upheld such a plea allocution when the error did not affect a substantial right. *See, e.g., United States v. Pattee*, 820 F.3d 496, 509 (2d Cir. 2016) (finding that even though the district court judge "did not strictly comply with Rule 11," such deviation did not affect the defendant's "substantial rights because the full record demonstrates that [the defendant] was aware of the essence of those rights of which he was not specifically advised at the time of his plea, such that the failure to repeat that advice could not reasonably have affected [his] decision to plead guilty"); *United States v. Rodriguez*, 725 F.3d 271, 276 (2d Cir. 2013) (finding that where the defendant was not informed of the mandatory minimum sentence, the defendant had "not shown that any alleged error affected his substantial rights" and that "there is no reasonable probability that [the defendant] would have refrained from pleading guilty but for the purported error").

Here, Defendant's admissions during the guilty plea colloquy show that he was "aware of the essence of" the term "crimes of violence," such that his substantial rights were not affected because "there is no reasonable probability that [he] would have refrained from pleading guilty[.]" *Pattee*, 820 F.3d at 509; *Rodriguez*, 725 F.3d at 276. This Court informed Defendant that the "crime of violence" serving as the predicate offense of count five was the Hobbs Act robbery charge in count four. (Plea Tr. 7:5–13.) This Court then advised Defendant that count five carried a mandatory minimum consecutive sentence of 7 years' imprisonment, which Defendant said he

15

understood. (*See id.* 8:6–16.) Defendant then admitted on the record to the three Hobbs Act robberies:

> On November 24th, I possessed a firearm in the Bronx. On November 30th, I robbed a jewelry store at gunpoint in Pelham Manor, in New York. And then on November 3rd, [] I robbed a GameStop store in the Bronx. On November 15th, I robbed a GameStop store in the Bronx at gunpoint. On November 15th, I used a firearm in a robbery at a GameStop business and brandished it.

(*See id.* 14:21–15:2.) It is clear that Defendant understood that his three Hobbs Act robberies constituted "crimes of violence" under § 924(c), as he was able to articulate the elements that made his crime violent, that is, "possess[ing]," "us[ing]," and "brandish[ing]" a firearm. *See id.* Defendant has thus failed to establish a "reasonable probability" that if he had been advised of the different approaches used to evaluate Hobbs Act robbery as a "crime of violence" under the force and risk-of-force clauses, "he would not have entered the plea." *See Torrellas*, 455 F.3d at 103. Instead, Defendant's actions demonstrate that he understood the consequences of his plea and pleaded guilty accordingly. Therefore, his plea was entered knowingly and voluntarily, and did not affect a substantial right. His 7-year mandatory minimum consecutive sentence pursuant to § 924(c)(3) is proper.

## VI. CONCLUSION

Because Defendant's prior robbery convictions constitute "violent felon[ies]" under the ACCA's force clause, his 15-year mandatory minimum was proper. In addition, Defendant's Hobbs Act robbery offenses are "crimes of violence" under § 924(c), so his 7-year mandatory minimum consecutive sentence was correctly imposed as well. Accordingly, Defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255, (ECF No. 40), is DENIED.

Dated: August 5, 2019
      New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge